1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    DUSTIN GORMLEY, *et. al.*,                    Consolidated Case No. C 11-893 SI

10                Plaintiffs,                       **ORDER DENYING PLAINTIFFS'**
                                                   **MOTION FOR CLASS CERTIFICATION**
11        v.

12   NIKE INC., *et al.*

13                Defendants.
                                            /
14   _____

15         Now before the Court is plaintiffs' motion for class certification. Having considered the

16   arguments of the parties and the papers submitted, the Court hereby DENIES plaintiffs' motion.  As set

17   forth in this order, the Court denies certification on the ground that the named plaintiffs are not typical

18   because their experiences were not consistent with Nike's "Information Capture Policy" that is

19   challenged in this lawsuit.  If plaintiffs wish to amend the complaint to add a new class representative,

20   plaintiffs may seek leave of Court to do so.

21

22                                      **BACKGROUND**[1]

23         Plaintiffs in these consolidated cases have brought putative class actions on behalf of themselves

24   and a class of consumers, alleging that defendants Nike, Inc., Nike USA, Inc. and Nike Retail Services,

25   Inc. ("Nike") have violated the Song-Berverly Credit Card Act of 1971, Cal. Civ. Code § 1747 *et seq.*,

26   _____

27         [1]  The parties have raised numerous evidentiary objections.  The Court does not rely on the
     evidence at issue in this order, and accordingly finds it unnecessary to rule on the objections which are
28   therefore moot.

United States District Court
For the Northern District of California

by requesting and recording the ZIP codes[2] of credit card customers through Nike's "Information Capture Policy." Consolidated Compl. ¶¶ 2, 13. Section 1747.08 of the Song-Beverly Act provides, in relevant part,

> (a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following:
>
> (1) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal identification information upon the credit card transaction form or otherwise.
>
> (2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.
>
> (3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification information of the cardholder.

Cal. Civ. Code § 1747.08(a). "Personal identification information" is defined in section 1747.08, subdivision (b) as "information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number." The Act was amended in 1991 by adding the word "request" to the statute.

It is undisputed that during the majority of the class period (February 24, 2010 to February 24, 2011), Nike implemented and maintained a policy whereby its cashiers were trained to follow Nike's "EPOC manual" which required cashiers to perform the following process when conducting a credit card purchase transaction:

Step 1:     Nike's cashiers scanned the customer's merchandise. Once all the merchandise was scanned, the cashier folded and bagged the merchandise and totaled the transaction.

Step 2:     The customer was instructed to then swipe his or her credit card and Nike's point-

---

[2] "ZIP is an acronym that stands for 'Zone Improvement Plan.'" *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal.4th 524, 527 n.2 (2011) (citing United States Postal Service mailing standards).

United States District Court
For the Northern District of California

1  of-sale ("POS") system (via the keypad facing the customer) asked the customer

2  to confirm the total amount due by pressing "Yes" or "No."

3  Step 3:    The POS confirmed the card was authorized by checking with the appropriate

4  financial entity, and the cashier asked the customer to sign on the keypad and then

5  to press "Done" to accept his or her signature. The customer's receipt printed and

6  the cashier gave the customer the receipt and merchandise; and

7  Step 4:    Nike's cashiers were prompted with a pop-up box on their screen to enter the

8  customer's ZIP code.  The screen on the sales register that allowed the cashier to

9  input a customer's ZIP code did not appear until after the credit card was

10  authorized and the receipt was printing.  If a customer declined to provide a ZIP

11  code, Nike's cashiers entered any alphanumeric combination (e.g., "n," "99999,"

12  or even their own ZIP code) into the POS system.

13  Stonebarger Decl. Ex. B; McKinley Decl. ¶¶ 3-8, Ex. A-M.

14         The technical specifications for the point-of-sale software states that "a new function will be

15  created that when a trade transaction is complete, that is, when the receipt and tender(s) have been

16  exchanged between the cashier/associate and the customer, the cashier/associate will be prompted to ask

17  the customer for their ZIP code."  McKinley Decl. ¶ 3, Ex. A.  Nike's corporate designee testified that

18  each ZIP code captured by Nike at the point-of-sale is specifically associated with the Transaction ID

19  for the purchase transaction.  Stonebarger Decl. Ex D (McKinley depo. at 34-35).  It is undisputed that

20  this same point-of-sale software was used in every one of Nike's California retail locations and was not

21  modified until February 17, 2011.[3]  It is also undisputed that Nike trained each of its employees on the

22  use of this point-of-sale system, and that Nike employees were required to receive a certificate of

23  compliance verifying their training on the POS system before Nike would permit the employee to work

24  as a cashier.

25         Nike also permanently affixed signs to the counters at each sales register stating:

26  _____

27         [3]  On February 17, 2011, Nike changed the software in its California retail stores so cashiers
28  could no longer input customers' zip codes.

3

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Nike will ask for your ZIP code during all purchases and returns. This information is used for marketing and consumer research only. Providing your zip code is voluntary and not required to complete your transaction. Under the specific terms for our posted return policy, additional information will be required when processing a return.

McKinley Decl., Ex. N.[4]

During the class period, once the customer's ZIP code was requested and recorded in Nike's POS system, the following information was stored by Nike in a data storage platform that was created for Nike by NSB Retail Solutions, Inc.: (1) the date of purchase; (2) the store location; (3) the specific items purchased and related information; (4) the customer's method of tender (e.g., credit card payment); (5) the customer's name as listed on the credit card; and (6) the customer's ZIP code.

All of the information that was obtained by Nike at the POS was also transmitted on a daily basis to a third-party information broker/vendor named Merkle, Inc. Merkle was Nike's consumer relationship management vendor. Pursuant to a contract with Nike, Merkle would match the customer information provided by Nike (including names, zip codes, and transaction IDs) to consumer profiles in Merkle's possession and supplement the information provided by Nike with additional information such as the address of the consumer. Based upon the results of Merkle's matching of Nike's customers' information, Merkle would create Nike consumer profiles and store these profiles on behalf of Nike. The purpose for Nike's use of Merkle was to coordinate marketing that would target various groups of consumers.

In support of class certification, plaintiffs submitted evidence that, during the class period, Nike's ZIP code request policy was implemented at every Nike retail store in California, and ZIP codes were requested and recorded during approximately 561,179 transactions. Stonebarger Decl., Ex. A at 36:12-14, G at 3:15-18. Defendants have submitted, *inter alia*, the deposition testimony of the three named plaintiffs. Mr. Gormley and Ms. McCartney both testified that cashiers asked them for their ZIP codes before providing them with their receipts and merchandise. Brown Decl. Ex. 1 (Gormley depo. at 84-85, 202-03); Ex. 2 (McCartney depo. at 118, 138-39, 121, 152-53). Ms. Hartman testified that although she could not remember any details about the credit card transaction that is the basis of her claim, she was sure that she had not received her receipt or merchandise before she was asked for her

---

[4] This sign also contained the same information in Spanish.

4

ZIP code.  *Id.* Ex. 3 (Hartman depo. at 112-14).

<strong>United States District Court</strong><br>For the Northern District of California

### LEGAL STANDARD

Class certification is warranted where a plaintiff demonstrates that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied.  *See* Fed. R. Civ. P. 23; *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).  Rule 23(a) provides that a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to demonstrating that the Rule 23(a) requirements are met, plaintiff must establish one or more of the following grounds for maintaining the suit as a class action pursuant to Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the court must focus solely on whether the requirements of Rule 23 are met, not whether the plaintiff has stated a cause of action or will prevail on the merits.  *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).  Accordingly, the court must accept as true the substantive allegations made in the complaint.  *In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982).  However, although the court may not require preliminary proof of the substance of the plaintiff's claims, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements," but may also "consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.26 (4th ed. 2005).  The court should conduct an analysis that is as rigorous as necessary to determine whether class certification is appropriate.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

**DISCUSSION**

## I.      Class definition and interpretation of § 1747.08

Plaintiffs move to certify the following class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3): "All persons from whom Nike requested and recorded a ZIP code in conjunction with a credit card transaction at its retail stores located in California from February 24, 2010 through February 24, 2011." The following people are excluded from the proposed class: (1) people who used a credit card issued to a business; (2) people whose personal identification information was required for a special purpose incidental but related to the individual credit card transaction, including but not limited to information related to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders; (3) officers and directors of Nike and of its corporate parents, subsidiaries, affiliates, or any entity in which Nike has a controlling interest, and the legal representatives, successors, or assignees of any such excluded persons or entities; and (4) the Court.

Many of the parties' arguments on class certification turn on their differing interpretations of the statute. Defendants argue that plaintiffs' proposed class definition "sweeps in unharmed persons and is an impermissible failsafe class." Docket No. 86 at 11 :18-19. Defendants argue that the class definition is overbroad because Section 1747.08 does not apply after a transaction ends. Defendants argue that under Nike's policy, cashiers were not prompted to request ZIP code information until after the credit card had been authorized, the receipt had been printed, and the customer provided with the receipt and merchandise. However, this argument is not actually a challenge to the proposed class definition; instead, defendant is arguing that its policy does not violate the statute. While the Court must consider the merits of plaintiffs' claims if the merits overlap with Rule 23 requirements, *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir. 2011), this challenge goes solely to the merits and does not implicate the propriety of the class definition.[5]

_____

[5] Defendants do not explain their contention that the proposed class is an impermissible "fail-safe" class. A fail-safe class defines the class in such a way that "the class members either win or are not in the class . . . the Court cannot enter an adverse judgment against the class." *See Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007); *see also Dodd–Owens v. Kuphon, Inc.*, No. 06–3988 JF, 2007 WL 420191, at *3 (N.D. Cal. Feb.5, 2007) (striking the words "who have experienced gender discrimination . . . " from a class definition on the ground that it created a "fail-safe class"). Here, the proposed class definition includes all individuals "from whom Nike requested and recorded a ZIP code in conjunction with a credit card transaction at its retail stores located in California

United States District Court
For the Northern District of California

Defendants also contend that there is no violation of the statute if a customer voluntarily provides his or her ZIP code for a purpose unrelated to paying with a credit card, and therefore that the class is overbroad and individual issues predominate.  Plaintiffs contend that there is no voluntariness defense, and that the statute prohibits any request for personal information in conjunction with a credit card transaction.  The parties' arguments center on the meaning of the word "request" in the statute.  The statute provides that "no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall . . . Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise." Cal. Civ. Code § 1747.08(a).  Plaintiffs contend that a retailer violates this section by (1) requesting personal identification information from a credit card customer and then recording it, *or* (2) requiring a customer to provide such information as a condition to accepting the credit card as payment and then recording it.  Defendants argue that courts have rejected plaintiffs' expansive interpretation of the statute, and that "[i]f, as the plaintiffs . . . urge, the phrase 'as a condition to accepting the credit card' does not apply to the word request, then nothing ties a violation of the Act to a credit card transaction at all." *Gass v. Best Buy Inc.*, 279 F.R.D. 561, 569 (C.D. Cal. 2012).

In *Florez v. Linens 'N Things, Inc*.,108 Cal. App. 4th 447 (2003), the California Court of Appeal analyzed whether the Song-Beverly Act prohibited a retailer from requesting a customer's personal information at the inception of a purchase transaction, before the customer announced his or her preferred method of payment.  The court first noted that "section 1747.8[6] is a consumer protection statute, and the retailer's request for personal identification information must be viewed from the customer's standpoint.  In other words, the retailer's unannounced subjective intent is irrelevant.  What does matter is whether a consumer would perceive the store's 'request' for information as a 'condition'

from February 24, 2010 through February 24, 2011."  This is not a fail-safe class because the class is defined neutrally and if Nike's ZIP code capture policy is found legal, the class members are bound by this adverse judgment.

[6] The section was subsequently renumbered to its current location, Cal. Civ. Code § 1747.08.

of the use of a credit card." *Id*. at 451.

Viewed from this perspective, we think there is nothing ambiguous or unclear about the statute. By its plain language, it prohibits a "request" for personal identification information in conjunction with the use of a credit card. As the Senate Committee on the Judiciary Analysis of Assembly Bill No. 1477 explains, section 1747.8 was amended to add the word "request," and "[t]his bill would clarify that persons may neither require nor request, as a condition to accepting the credit card, the taking or recording of personal identification information from the cardholder. (Current law states such information may not be required, but does not prohibit requesting such information.)"

. . .

LNT insists its employees did nothing to suggest the provision of a telephone number was a requirement or condition of payment by credit card. Because there was no discernible link between the request and the use of the credit card, LNT claims section 1747.8 does not apply here. As LNT interprets it, section 1747.8 allows a retailer to request consumer telephone numbers before the manner of payment is known because the timing of the request eliminates any concern that the provision of such information is a condition of credit card payment.

The argument is not persuasive. As evidenced by the 1991 amendment, section 1747.8 is designed to prevent a "request" for personal information, because a customer might perceive that request as a condition of credit card payment. In effect, the 1991 amendment prevents a retailer from making an end-run around the law by claiming the customer furnished personal identification data "voluntarily." In fact, the Enrolled Bill Report of the California Department of Consumer Affairs, Assembly Bill No. 1477 (1991–1992 Reg. Sess.), specifically addressed this problem, noting "[t]his bill would prohibit requesting or requiring that information." As we read it, the legislative intent suggests the 1991 amendment simply clarified that a "request" for personal identification information was prohibited if it immediately preceded the credit card transaction, even if the consumer's response was voluntary and made only for marketing purposes.

*Id*. at 451-52. The *Florez* court also stated,

We note that nothing prevents a retailer from soliciting a consumer's address and telephone number for a store's mailing list, if that information is provided voluntarily. Retailers are not without options in this regard. A merchant can easily delay the request until the customer tenders payment or makes his or her preferred method of payment known. If the payment is made with cash, and the customer is so inclined, personal identification information can be recorded at that time. Alternatively, retailers could delete a customer's personal identification information as soon as the customer reveals an intention to pay by credit card. In other words, the statutory mandate can hardly be described as draconian. None of these alternatives represents any great imposition on retailers.

*Id*. at 451-52.

In *Absher v. AutoZone, Inc*., 164 Cal. App. 4th 332 (2008), the California Court of Appeal reiterated that "Subdivision (a)(1) now prohibits merchants from *requesting or requiring* credit card customers to write personal identification information on a credit card form *as a condition precedent*

8

*to accepting payment by credit card.* Similarly, (a)(2) prohibits merchants from *requesting or requiring* credit card customers to provide personal identification information—*as a condition precedent to accepting payment by credit card*—so that the merchant can write the information on the credit card form." *Id.* at 342 (emphasis added). Thus, under *Florez* and *Absher*, the Song-Beverly Act prohibits merchants from requesting personal identification information as a condition precedent to accepting payment by a credit card, but the statute is not violated if a customer provides such information voluntarily for a purpose unrelated to processing the credit card transaction. *See Gass*, 279 F.R.D. at 570 (requesting personal identification for enrollment in rewards program did not violate Song-Beverly Act); *Davis v. Devanlay Retail Group,* Inc., No. 2:11–CV–01719–KJM–CKD, 2012 WL 6589204, at *3 (E.D. Cal. Dec. 17, 2012) (quoting *Florez* and holding that "[t]he permissibility of a retailer's request for a customer's personal information turns on 'whether a consumer would perceive the store's "request" for information as a "condition" of the use of a credit card.'").

Plaintiffs argue that the plain language of the statute prohibits any request for personal identification information in conjunction with a credit card transaction. While plaintiffs' argument is not without force, this Court is required to interpret the statute in a manner consistent with that of the California courts in *Florez* and *Absher*. Plaintiffs also rely on the California Supreme Court's statement in *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 527 (2011), that "requesting and recording a cardholder's ZIP code, without more, violates [the Song-Beverly Act]." However, *Pineda* did not address whether the statute prohibits any "request" for personal information in conjunction with a credit card payment. Instead, *Pineda* only decided the question of whether ZIP codes constituted "personal identification information" within the meaning of the statute. *See id.* at 530 ("[T]he outcome of this case hinges on whether a cardholder's ZIP code, without more, constitutes personal identification information within the meaning of section 1747.08."); *see also Davis*, No. 2:11–CV–01719–KJM–CKD, 2012 WL 6589204, at *4 ("Additionally, the *Pineda* court's statement that 'requesting and recording a cardholder's zip code, without more, violates [Song Beverly],' 51 Cal.4th at 527, 120 Cal.Rptr.3d 531, 246 P.3d 612, was merely clarifying that zip codes alone without street address information still constitute PII.").

Plaintiffs assert that the California Court of Appeal rejected defendants' arguments in an

unpublished case, *Carson v. Michaels Stores, Inc.*, No. D055477, 2011 WL 2120195 (Cal. Ct. App. May 31, 2011).  In *Carson*, the court cited *Pineda* for the proposition that ZIP codes constituted personal identification information.  *Id*. at *3.  The court also held, "Michaels also asserted that it did not violate the Act as it did not condition acceptance of Carson's credit card upon her disclosing her ZIP code. However, based upon *Pineda*, these contentions no longer have merit because *Pineda* held (1) a cardholder's ZIP code 'constitutes 'personal identification information' as that phrase is used in section 1747.08' and (2) 'requesting and recording a cardholder's ZIP code, without more, violates the statute.'" *Id*.  This Court does not consider *Carson* persuasive authority because *Pineda* did not examine whether the statute prohibited any request for PII in conjunction with a credit card transaction, and *Carson* did not discuss *Florez* or *Absher*, both of which are published decisions.[7]

Defendant argues that certification should be denied because "in determining whether § 1747.08 has been violated, the Court must analyze . . . whether the individual at issue (plaintiff or absent class member) did actually perceive Nike's request for their ZIP code to be a condition to accepting their credit card."  Docket No. 86 at 16:7-8.  However, courts have held that a customer's subjective belief is irrelevant, and instead the merchant's policy "must be evaluated under an objective standard."  *Davis*, 2012 WL 6589204, at *4 ("Although Davis argues that her deposition shows she believed her zip code was necessary to make her purchase . . . , her personal belief is irrelevant."); *Juhline v. Ben Bridge Jeweler, Inc*., No. 11cv2906–WQH–NLS, 2012 WL 3986316, at *5 (S.D. Cal. Sept. 11, 2012) ("A court applies an objective test to determine whether a retailer's request for personal identification information would be perceived as a condition of credit card payment."); *cf. Korn v. Polo Ralph Lauren Corp*., 644 F. Supp. 2d 1212, 1216 (E.D. Cal. 2008) ("A plain reading of the statute, as further supported by legislative intent, supports the *Florez* court's holding that a defendant is not allowed to request such information because 'a customer might perceive that request as a condition of credit card payment' . . . As such, plaintiff need not expressly allege that he believed such information was necessary to complete

---

[7]  Plaintiffs also contend that "[t]he fact that there is no voluntariness exception is further confirmed by the 'anti-waiver' provision in Section 1747.04, which provides that "[a]ny waiver of the provisions of [the Song-Beverly Act] is contrary to public policy, and is void and unenforceable." Cal. Civ. Code § 1747.04.  However, whether the requirements of a statute can be waived is a distinct question from what constitutes a violation of the statute.

the transaction."). Thus, the Court will apply an objective standard to determine whether Nike's policy for requesting ZIP codes would be perceived as a condition of credit card payment, and this question can be resolved on a class basis.

## II.       Rule 23(a)

Rule 23(a)(3) requires the named plaintiffs to show that their claims are typical of those of the class. To satisfy this requirement, the named plaintiffs must be members of the class and must "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quotation marks and citation omitted). The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted). Rule 23(a)(3) is "permissive" and only requires that the named plaintiffs' claims be "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

The Court finds that although the typicality requirement is not stringent, plaintiffs have not demonstrated that they are typical of the class they seek to represent. The consolidated complaint challenges Nike's "Information Capture Policy," and yet all of the named plaintiffs testified that their experiences were not consistent with that policy. Mr. Gormley and Ms. McCartney both testified that cashiers asked them for their ZIP codes before providing them with their receipts and merchandise, and Ms. Hartman testified that although she could not remember any details about the credit card transaction that is the basis of her claim, she was sure that she had not received her receipt or merchandise before she was asked for her ZIP code because she would not have provided her ZIP code if the request had been made after she was provided her receipt and merchandise. However, under the Nike policy that is the subject of this lawsuit, cashiers were prompted to request ZIP codes after giving customers their receipts and merchandise. Plaintiffs do not dispute that this was the Nike policy, but instead argue that the timing of the request for ZIP codes is irrelevant because the statute prohibits any request for personal identification information in conjunction with a credit card transaction. As discussed above, the Court disagrees with this interpretation of the statute. Because the legality of Nike's policy depends on

United States District Court
For the Northern District of California

whether a consumer would perceive the store's request for a ZIP code as a condition of the use of a credit card, the timing of that request is relevant.

Accordingly, the Court finds that the named plaintiffs are not typical of the class they seek to represent, and DENIES class certification on this ground.  As such, the Court finds it unnecessary to address defendants' challenges to the adequacy of these named plaintiffs.[8]

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES plaintiffs' motion for class certification. Docket No. 63.   If plaintiffs wish to amend the complaint to add a new class representative, plaintiffs may seek leave of Court to do so.

**IT IS SO ORDERED.**

Dated: January 28, 2013

_____
SUSAN ILLSTON
United States District Judge

---

[8]   The Court notes, however, that it appears that plaintiffs have established numerosity, commonality, and the Rule 23(b)(3) requirements.

**United States District Court**
For the Northern District of California